A91A0079. BENNETT et al. v. MATT GAY CHEVROLET
OLDSMOBILE, INC. et al.
(408 SE2d 111)

POPE, Judge.

Plaintiff Dorothy M. Bennett was injured when she lost control of her 1983 Chevrolet Citation and it ran off the road and collided with a tree. Plaintiff and her husband brought suit against General

Motors Corporation and Matt Gay Chevrolet Oldsmobile, Inc., the dealership from which she purchased the car and which made repairs on the car. Plaintiffs' expert witness testified at deposition that the accident was caused by a binding in the reconditioned power steering unit installed in the car by the dealership in an effort to correct a continuing complaint by the plaintiffs that the car was subject to loss of steering control.

Plaintiffs voluntarily dismissed the original complaint without prejudice. They refiled the complaint on November 22, 1989, two days before the expiration of the six-month renewal period granted by OCGA § 9-2-61 but after the expiration of the period of limitation for personal injury actions. Service of process was perfected on General Motors on December 5, 1989, more than five days after the complaint was filed. The trial court granted defendant General Motors' motion to dismiss the complaint for untimely service of process and granted summary judgment to both defendants. Plaintiffs appeal.

1. The first issue raised on appeal is whether the trial court abused its discretion in dismissing the claim against General Motors for untimely service of process. In this case, the period of limitation for plaintiffs' action had expired but because the renewed complaint was filed within the six-month renewal period provided by OCGA § 9-2-61, the filing of the complaint related back to date of the timely filed original complaint for purposes of the statute of limitation. Service of process would have been automatically timely if made within five days as set forth by OCGA § 9-11-4 (c). Service was not perfected, however, until 13 days after the complaint was filed, which was 11 days after the expiration of the six-month grace period of the renewal statute.[1] " 'Where an action is filed within the applicable limitation period but is not served upon the defendant within five days thereafter or within the limitation period, the plaintiff must establish that he acted in a reasonable and diligent manner in attempting to insure that proper service was effected as quickly as possible; and if he is guilty of laches in this regard, service will not relate back to the time of filing of the complaint for the purpose of tolling the statute of limitation. (Cit.) The plaintiff has the burden of showing that due diligence was exercised. (Cits.) Ordinarily, "(t)he determination of whether the plaintiff was guilty of laches in failing to exercise due diligence in perfecting service after the running of the statute of limitations is a matter within the trial court's discretion and will not be disturbed on appeal absent abuse." (Cit.)' *Shears v. Harris*, 196 Ga.

---

[1] Although the sheriff did not serve the agent for 13 days, we note that because the Thanksgiving holiday and two weekend periods fell within those 13 days, only seven of those days were business days on which service could have been perfected within the regular course of business.

App. 61 [, 62] (395 SE2d 300) (1990)." *Green v. Young*, 197 Ga. App. 101, 101-102 (397 SE2d 509) (1990).

"[T]he correct test must be whether the plaintiff showed that he acted in a reasonable and diligent manner in attempting to insure that a proper service was made as quickly as possible." *Childs v. Catlin*, 134 Ga. App. 778, 781 (216 SE2d 360) (1975). General Motors argues that the dismissal was not an abuse of discretion because plaintiffs presented no evidence that they acted in a reasonable and diligent manner. The record shows, however, that plaintiffs provided the sheriff's office with the proper address of defendant's agent for service of process on the date the renewal complaint was timely filed. Thus, the record affirmatively shows the plaintiffs did all that was initially required of them.[2] Every case of which we are aware in which this court has affirmed the dismissal of the complaint for untimely service of process has involved lack of diligence by the plaintiff in determining the location where defendant could be properly served. See, e.g., *McManus v. Sauerhoefer*, 197 Ga. App. 114 (397 SE2d 715) (1990); *Green v. Young*, supra; *Shears v. Harris*, 196 Ga. App. 61 (395 SE2d 300) (1990); *Watters v. Classon*, 193 Ga. App. 493 (1) (388 SE2d 397) (1989); *Varricchio v. Johnson*, 188 Ga. App. 144 (372 SE2d 455) (1988); *Ellerbee v. Interstate Contract Carrier Corp.*, 183 Ga. App. 828 (360 SE2d 280) (1987); *Brumbalow v. Fritz*, 183 Ga. App. 231 (2) (358 SE2d 872) (1987); *Forsyth v. Brazil*, 169 Ga. App. 438 (313 SE2d 138) (1984); *Bible v. Hughes*, 146 Ga. App. 769 (2) (247 SE2d 584) (1978). Thus, these cases are materially distinguishable from the facts now before us. The trial judge made no finding of laches, lack of diligence or any other factor than mere lapse of time, nor would the facts of this case support such a finding. Thus, the dismissal is reversed. See *Childs v. Catlin*, supra.

2. The trial court did not err in granting summary judgment to defendant dealership. The implied warranty of merchantability may be excluded in writing if conspicuous. OCGA § 11-2-316 (2). Plaintiffs' breach of warranty claim is precluded by the disclaimer language printed on the work order signed by plaintiff Dorothy Bennett. While the text of the disclaimer is not in bold print, the heading "DISCLAIMER OF WARRANTIES" is in large capital letters and the entire paragraph, including a space where Mrs. Bennett signed the form, is blocked off by an outline. Thus, the printed language effectively

---

[2] We are not aware of any procedure by which a plaintiff may compel a sheriff to serve properly filed process papers. A plaintiff should not be penalized for reasonably relying upon the sheriff to fulfill his duty to serve properly addressed process papers. Only if a properly executed return of service form is not filed within a reasonable time after the expiration of the five days provided for service would the plaintiff be on notice that the sheriff has not fulfilled his duty but by that time the period would have expired, anyway.

precludes a claim for breach of implied warranty. See *Steele v. Gold Kist*, 186 Ga. App. 569 (2) (368 SE2d 196) (1988); *Harris v. Sulcus Computer Corp.*, 175 Ga. App. 140 (3) (332 SE2d 660) (1985).

The power steering unit which plaintiffs claim was defective and caused their injuries was purchased by defendant dealership from a parts supplier in a sealed housing. Pursuant to the "sealed package doctrine," a vendor who is not the manufacturer of a product is under no obligation to test an article purchased and sold by him for the purpose of discovering latent defects if it is an article sold in the usual course of trade and the seller is without knowledge of the article's dangerous quality. See *King Hardware Co. v. Ennis*, 39 Ga. App. 355 (1) (147 SE 119) (1928). This rule is applicable to automobile dealers. *Glynn Plymouth v. Davis*, 120 Ga. App. 475 (2) (170 SE2d 848) (1969). The record shows defendant dealership had done business with the supplier of the power steering unit on previous occasions and had no knowledge that the unit was defective. The dealership test-drove the vehicle, making sharp turns and figure-eight turns before delivering the car back to plaintiffs and discovered no problem. Defendant dealership presented evidence that it ordered a power steering unit for the proper model year of plaintiffs' car. The fact that the package contained internal parts which were not the same model year as plaintiffs' car was not discoverable without taking the housing apart, as was done during discovery. As set forth above, defendant in this case was under no duty to inspect this sealed unit before installation. Contrary to plaintiffs' argument, no factual issues concerning defendant dealership's negligence remain. Thus, it was entitled to summary judgment.

3. Because the dealership was entitled to summary judgment, then General Motors was also entitled to summary judgment on plaintiffs' claim of imputed negligence since no issue of the dealer's negligence remained which could be imputed to General Motors. The trial court did not err in granting summary judgment to General Motors on plaintiffs' strict liability claim because the facts show General Motors was not the manufacturer of the power steering package installed on plaintiffs' car. See *Pierce v. Liberty Furniture Co.*, 141 Ga. App. 175 (1) (233 SE2d 33) (1977).

However, we cannot hold that no issue of fact remains for jury determination on plaintiffs' claim for General Motors' own negligence or breach of warranty. At the time the power steering unit was installed, the warranty period on General Motors' manufacturer's warranty had already expired. The record reflects, however, that plaintiffs had complained earlier of steering problems with the car and that certain repairs were made by General Motors, by and through the dealership, either under the warranty or, after the warranty had expired, as a courtesy to the owners. The record also suggests General

Motors was aware that the automobile model in question had a defect in the steering mechanism and that a "secret warranty" was extended by the manufacturer to correct the defect. While these facts are not conclusively established by the record, plaintiffs at this point in the proceeding need not present a prima facie case of negligence or breach of warranty. Instead, in order to prevail on its motion for summary judgment, defendant must pierce the pleadings and show that no issue of fact remains for jury determination on these issues. This the defendant has failed to do. Even though plaintiffs' expert witness testified that the accident was caused by a defect in a replacement part neither manufactured nor installed by defendant General Motors, an issue remains for the jury to determine if General Motors was negligent or breached its warranty to plaintiffs and, if so, whether the installation of the replacement part in question was foreseeable and thus whether such negligence or breach by General Motors was the proximate cause of plaintiffs' injuries.

*Judgment affirmed in part and reversed in part. Birdsong, P. J., and Cooper, J., concur.*

### ON MOTION FOR RECONSIDERATION.

On motion for reconsideration, defendant General Motors Corporation argues our holding is inconsistent with *Talley v. City Tank Corp.*, 158 Ga. App. 130 (279 SE2d 264) (1981), in which this court held a manufacturer may not be held liable for injuries proximately resulting from a defect in the design of a product when its design has been independently altered after the sale. In *Talley*, the modifications to the original design were made for reasons unrelated to the worthiness of the original design. Here, however, the alleged defect in the original design may be shown to be the proximate cause of the injuries if the evidence shows, as plaintiffs allege, that the replacement part was installed because the original part was defective. Thus, unlike the factual posture in *Talley*, an issue remains for the jury to determine whether the injury was the proximate result of a defect in the product which existed at the time it was sold.

*Motion for reconsideration denied.*

DECIDED MAY 23, 1991 —
RECONSIDERATION DENIED JULY 9, 1991 —

*Awtrey & Parker, Dana L. Jackel, Barbara H. Martin, Callaway, Neville & Brinson, William J. Neville, Jr.*, for appellants.
*King & Spalding, Lanny B. Bridgers, R. Hutton Brown*, for ap-

pellees.